JAMES A. REFORD v. GEORGE CRAMER, EDWARD PIERSON, AND GEORGE S. CORWIN.

1. That part of the sixth section of the act in regard to insolvent debtors (*Nix. Dig.* 378,)* which requires the debtor's conduct to be fair, upright, and just, must be restricted to his conduct in making his account and inventory, and in delivering up to his creditors all his estate, and does not apply to the conduct of the debtor in contracting his debt.

2. If the debtor has made a conveyance of his real property to his wife, although before the debts were contracted, it is a question for the jury whether such conveyance was made with intention to defraud his

---

*Rev.*, p. 499, § 11.

creditors. Such conveyance is not *per se* fraudulent and void; yet, if not made *bona fide* and for the benefit of the wife, but with a fraudulent intent, it comes within the provision of the tenth section of the insolvent act, and is a good bar to the defendant's discharge.

*Certiorari* to the Common Pleas of Essex. In matter of insolvency.

This case was argued before Justices HAINES and ELMER.

For the plaintiff in *certiorari*, *W. K. McDonald.*

For the defendant, *C. L. C. Gifford.*

The opinion of the court was delivered by

ELMER, J. The plaintiff in this *certiorari* applied to the Court of Common Pleas of the county of Essex for the benefit of the insolvent laws. At the hearing of the case, July 1st, 1861, the court would have discharged him, but for the filing of an undertaking by the defendant, pursuant to the 8th section of the act. *Nix. Dig.* 378.* The plaintiff having declared as directed by the 9th section, the defendant pleaded thereto; issue was joined, and the case brought to trial before a jury.

Among other things proved on the trial, it appeared that, on May 4th, 1858, a deed was made to the plaintiff's wife for a house and lot, situated in Bloomfield, which it was alleged, on behalf of the defendant, was designed fraudulently to cover up the property, and keep it free from the claims of plaintiff's creditors.

It further appeared that, in April, 1858, the plaintiff rented a paper mill in Morris county, and shortly afterwards he began to deal with Cramer and Pierson, who were partners and merchants in Morristown, and paid his indebtedness to them in full up to October, 1858. They afterwards obtained a judgment against him in the Essex Circuit Court for a debt contracted after the last mentioned day, and have filed a bill in equity to set aside the conveyance to plaintiff's wife as

*Rev., p. 500, § 13.

fraudulent.  Corwin, the other defendant, obtained a judg-
ment on a promissory note, endorsed by him for plaintiff's
accommodation, May 4th, 1859, which note was given for the
rent of the mill from October 1st, 1858, said defendant being
at the time plaintiff's partner in the manufacture of paper.
The said defendant also became the assignee of another judg-
ment against plaintiff, obtained for a debt contracted in 1859,
upon which said defendant was security.

There was evidence that the plaintiff, in May, 1858, and
subsequently, represented to his creditors that he had prop-
erty in Bloomfield, for which he had been offered three
thousand dollars; that it was worth three to four thousand
dollars, and was not encumbered.  The plaintiff denied that
he had ever made any such representations.

The court charged the jury, among other things, as follows:
" If you believe, from the testimony, that Reford, after
making conveyance of his property, represented himself as
still the owner of it, for the purpose of obtaining credit, and
did obtain credit on the faith of such representations know-
ing them to be false, then there is evidence going to show
that his conduct has not been fair, upright, and just; and if
you should be satisfied of this, your verdict should be in favor
of the creditors, and no further examination of the case would
be necessary."

The jury returned a verdict for the creditors, and judg-
ment was rendered that the debtor be continued in custody
until thence delivered by due course of law, as provided by
the statute.

A state of the case having been agreed upon and returned,
in answer to the *certiorari*, disclosing the above facts, it is
now insisted that the charge of the court to the jury was
erroneous.

The design of the insolvent act, as set forth in the first
section, is that a person in confinement for debt, who is will-
ing to deliver up to his creditor or creditors all his estate,
both real and personal, toward the payment of his creditor
or creditors, shall obtain his discharge in the manner therein

set forth. As one of the means of ascertaining his willingness to do so, the debtor is to be examined in open court and upon interrogatories, touching and concerning the disposition of his estate, the truth and fairness of his accounts and inventory, and also in regard to his confinement, to ascertain whether it was compulsory or voluntary, or whether he had been without the prison limits. If after the hearing, the court and creditors shall be satisfied that the conduct of the debtor has been fair, upright, and just, he shall make an assignment of his property, and forthwith be discharged. But if the creditors, or any of them, are not satisfied with the truth and honesty of the declaration and confession of the debtor, nor with the truth and fairness of the accounts and inventory exhibited, and such creditor shall undertake to the court to prove, by the first day of the term, that such debtor has concealed and secreted some part of his estate, and has not fairly, fully, and honestly delivered up to the use and benefit of his creditors the whole of his estate, the debtor shall be remanded, and the question submitted to trial by a jury.

To effect this object, the act prescribes the form of a declaration and plea, whereby the question is put in issue whether the plaintiff has well and truly complied with the insolvent act in all things on his part for the use and benefit of his creditors. From the several provisions of the act, as before enumerated, I think it is manifest that the general words used in the 6th section, which require the debtor's conduct so be fair, upright, and just, must be restricted to his conduct in making his account and inventory, and in delivering up to his creditors all his estate. This construction is indicated not only by the provisions I have enumerated, but also by the 20th section, which enacts that every insolvent debtor, having given up all his estate and conformed in all things to the directions of the act, shall for ever be discharged from his debts, so far as regards the imprisonment of his person. And this view of the act was evidently taken by this court in the cases of *Smick* v. *Opdycke*, 7 *Halst.*

347, and *Wallace* v. *Coil,* 4 *Zab.* 602. The 10th section of
the act, I think, confirms the same construction. It was not
originally a part of the act for the relief of persons imprisoned
for debt, but was the 4th section of an act, passed in 1830,
abolishing imprisonment for debt in certain cases. It enacts,
that if it shall appear to the satisfaction of the court, or by the
verdict of a jury, that the debtor has concealed or kept back
any part of his estate, or made any conveyance, deed, or mort-
gage, judgment, sale, transfer, assignment, or other disposition
of his estate, with intent to defraud his creditors, then he shall
be refused his discharge. Upon the revision of the statutes,
in 1846, it was incorporated with the insolvent debtors act, to
which it properly belongs; and, read in connection with the
other provisions of the act, makes it the duty of the court or
the jury to inquire whether by any such means the debtor is
seeking to keep back his property. But there is no indication
here, or in the other provisions of the act, that the conduct of
the debtor in contracting his debt is to affect his discharge.

It is by the act respecting imprisonment for debt in cases
of fraud (*Nix. Dig.* 354,)* that the fraudulent conduct of the
debtor in contracting the debt, is made a subject of inquiry.
This is for the purpose of subjecting him to arrest upon a
*capias,* and contains no reference to the subsequent proceed-
ings to discharge. It certainly was not the design of this
act, that a debtor, once properly arrested, should never be
discharged. As to the charge in regard to the conveyance
of the house and lot to the plaintiff's wife, which is also
complained of as erroneous, it is sufficient to remark, that it
was a proper question for the jury whether the conveyance
to the wife was made with the intent to defraud these cred-
itors. Although made before the debts in question were
contracted, and not *per se* fraudulent and void, yet if not
made *bona fide* and for the benefit of the wife, but with a
fraudulent intent, it came within the provisions of the 10th
section of he insolvent act, and was a good bar to the de-
fendant's discharge. The precise circumstances of the case

*Rev., p. 857, § 58.

are not so before us as to enable us to judge how the fact was, nor is it our province to interfere with the decision of the jury.

Being of opinion that the court erred, in instructing the jury in regard to the defendant's conduct, in contracting the debts he owed, the judgment must be reversed, and the proceedings remitted to the Court of Common Pleas, that there may be a new trial of the issue joined between the parties.

Judgment reversed.